JOHNSTON v STERLING MORTGAGE & INVESTMENT COMPANY

STERLING MORTGAGE & INVESTMENT COMPANY v JOHNSTON

Docket Nos. 324855 and 325238. Submitted March 8, 2016, at Detroit. Decided March 15, 2016. Approved for publication June 14, 2016, at 9:15 a.m. Leave to appeal denied 500 Mich 898.

In Docket No. 325238, Sterling Mortgage & Investment Company and Citi Investments LLC filed a summary-proceeding action in the 52-1 District Court to obtain possession of foreclosed property that had been owned by Ronald E. Johnston and Rosemarie P. Johnston because the Johnstons still resided in the home and had not redeemed the property before the expiration of the redemption period. The Johnstons filed an answer and jury demand, alleging that Sterling and Citi Investments had unlawfully refused to participate in and allow the redemption of the property. William R. Connolly moved to intervene in the action, alleging that he had an interest in the property because he had entered into a purchase agreement with the Johnstons during the redemption period. The court, Robert Bondy, J., granted judgment in favor of Sterling and Citi Investments and denied Connolly's motion to intervene. The Johnstons and Connolly appealed in the Oakland Circuit Court, and the appeals were consolidated. The Oakland Circuit Court, Daniel P. O'Brien, J., affirmed. The Johnstons and Connolly appealed by leave granted.

In Docket No. 324855, the Johnstons and Connolly filed a petition to quiet title to the property and a complaint for damages against Sterling, Citi Investments LLC, Citi Investment LLC, and Emre Uralli in the Oakland Circuit Court while the circuit court appeal in Docket No. 325238 was still pending. The complaint alleged six counts and indicated that while the Johnstons and Connolly had previously attempted to raise issues of frustration of redemption efforts, the district court judge avoided the litigation of those issues. Sterling, Citi Investments LLC, Citi Investment LLC, and Uralli moved for summary disposition, arguing that the action was barred by the doctrine of res judicata. The court, Daniel P. O'Brien, J., granted the motion for summary disposition. The Johnstons and Connolly appealed. The Court of Appeals consolidated the appeals in Docket Nos. 325238 and 324855.

The Court of Appeals *held*:

1. MCL 600.3240(1) provides, in relevant part, that a purchaser's deed under MCL 600.3232 is void if the mortgagor or any person that has a recorded interest in the property redeems the entire premises sold by paying the amount required within the applicable time limit to the purchaser or the purchaser's personal representatives or assigns, or to the register of deeds (ROD) in whose office the deed is deposited for the benefit of the purchaser. In this case, the Johnstons alleged that they were ready, willing, and able to tender payment for the purpose of redeeming the foreclosed property and would have done so but for appellees' purposeful failure to provide them with the full redemption amount and wiring information despite numerous requests for such information, thereby frustrating the Johnstons' efforts to pay. MCL 600.3240(1) specifically provides that the Johnstons had to pay the amount required to appellees or to the ROD; however, the Johnstons acknowledged that there had been no payment or delivery of funds. The Johnstons' argument that payment was not required when a proper "tender" had been made failed because nowhere in MCL 600.3240 is the term "tender" used. The term "tender" as used in MCL 600.3248, the statute that the Johnstons cited in support of this argument, focuses on a party's civil liability for refusing tender or payment, but it is MCL 600.3240 that specifically sets forth the process to be used in redeeming foreclosed property. The Johnstons also cited caselaw that used the term "tender" in situations involving the frustration of redemption efforts, but this caselaw predated MCL 600.3240 and therefore did not involve the statutory right to redemption in MCL 600.3240; the caselaw had used the terms "pay" and "tender" interchangeably because there had been no need to distinguish between the terms at the time. Even assuming that the Johnstons had the requisite money assembled and placed in the hands of people tasked to deliver it and that offers of payment had been communicated, the redemption funds were not "paid" as required by MCL 600.3240(1). Furthermore, the Johnstons' argument that they had been frustrated in their efforts to pay also failed because MCL 600.3240(1) specifically provides that payment may be made to the ROD. Therefore, the Johnstons could have simply submitted payment to the ROD, a fact that the Johnstons acknowledged when analyzing the legislative history of MCL 600.3240 in response to appellees' allegation that the Johnstons contacted the wrong individual for the purpose of making the payment. The Johnstons' argument that it was acceptable to make payment through Uralli, a representative of Citi Investment LLC, instead of through the designated contact

person listed on the Affidavit of Purchaser imposed an affirmative duty on appellees when none existed.

2. MCL 600.3240(14) provides, in relevant part, that the ROD, at the request of a person entitled to redeem the property, shall determine the amount necessary for redemption and that the ROD is not liable for damages proximately caused by an incorrect determination of an amount necessary for redemption. A plain reading of MCL 600.3240(14) did not support the Johnstons' claim that appellees had the right to reject a payoff to the ROD; instead, MCL 600.3240(14) simply insulated the ROD from liability for any incorrect calculation.

3. Because Connolly's rights were derivative of the Johnstons' rights and because the Johnstons' substantive arguments failed, the circuit court did not err by denying Connolly's motion to intervene.

4. MCR 2.116(C)(7) provides that summary disposition is appropriate if a claim is barred by a prior judgment. Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. Similarly, collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The summary proceeding at issue here involved the same parties (or their privies) as the quiet title action, the summary proceeding was decided on its merits, and the Johnstons raised the same argument—that appellees frustrated their attempts to redeem the property—in both; therefore, res judicata and collateral estoppel precluded the Johnstons from bringing the quiet title action.

5. MCL 600.5714(1)(g) provides, in relevant part, that a person entitled to possession of premises may recover possession by summary proceedings when a person continues in possession of premises sold by virtue of a mortgage after the time limited by law for redemption of the premises. MCL 600.5750 states that the remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable, or statutory; a judgment for possession under MCL 600.5701 *et seq.* does not merge or bar any other claim for relief; the plaintiff obtaining a judgment for possession of any premises under MCL 600.5701 *et seq.* is entitled to a civil action against the defendant for damages

from the time of forcible entry or detainer, or trespass, or of the notice of forfeiture, notice to quit or demand for possession, as the case may be. The Johnstons' argument that they were not required to litigate all issues relating to title because the district court proceeding was merely a holdover proceeding that did not bar future actions failed because MCL 600.5750 merely provides that possession is not a landlord's only remedy. Nothing in MCL 600.5750 stands for the proposition that, having litigated in the district court the issue regarding who has the right to the premises, the question can be relitigated de novo in a subsequent suit.

6. MCL 600.2932(1) provides that any person, whether he or she is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. MCL 600.8302(3) provides that, in an action under MCL 600.5701 *et seq.*, the district court may hear and determine an equitable claim relating to or arising under MCL 600.3101 *et seq.* (foreclosure), MCL 600.3301 *et seq.* (partition), or MCL 600.3801 *et seq.* (nuisance) or involving a right, interest, obligation, or title in land. MCL 600.8302(3) further provides that the district court may issue and enforce a judgment or order necessary to effectuate the court's equitable jurisdiction as provided in this subsection. A difference exists between want of jurisdiction and errors in exercising jurisdiction: once jurisdiction has attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside, the judgment is valid and binding for all purposes and cannot be collaterally attacked. The Johnstons' argument that only the circuit court had jurisdiction to decide the issue of title pursuant to MCL 600.2932(1) failed because district courts in Michigan have equitable jurisdiction and authority concurrent with that of the circuit court with respect to equitable claims arising under MCL 600.5701 *et seq.*, which concerns proceedings to recover possession of premises. Several recent unpublished decisions of the Court of Appeals contained appellate postures very similar to the case at bar and likewise provided that res judicata barred claims that contested foreclosure on the same grounds asserted in a prior action. The Johnstons' claim that appellees frustrated their attempt to redeem the property was decided in the district court; therefore, the

circuit court properly determined that the quiet title action was barred by the doctrine of res judicata.

Circuit court order granting appellees summary disposition in the quiet title action and denying Connolly's motion to intervene affirmed; circuit court order affirming the district court's judgment that granted appellees possession of the property in a summary proceeding affirmed.

1. Revised Judicature Act — Foreclosure of Mortgages by Advertisement — Redemption — Words and Phrases — "Paying."

MCL 600.3240(1) provides that a purchaser's deed under MCL 600.3232 is void if the mortgagor or any person that has a recorded interest in the property redeems the entire premises sold by paying the amount required within the applicable time limit to the purchaser or the purchaser's personal representatives or assigns, or to the register of deeds (ROD) in whose office the deed is deposited for the benefit of the purchaser; MCL 600.3240(1) specifically requires payment of the required amount; the fact that a person attempting to redeem the property is ready, willing, and able to tender the payment and has communicated offers of payment is not enough to satisfy the requirement in MCL 600.3240(1) that the redemption funds be paid.

2. Revised Judicature Act — Summary Proceedings to Recover Possession of Premises — Collateral Estoppel.

MCL 600.5750 states that the remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable, or statutory; a judgment for possession under MCL 600.5701 *et seq*. does not merge or bar any other claim for relief; the plaintiff obtaining a judgment for possession of any premises under MCL 600.5701 *et seq*. is entitled to a civil action against the defendant for damages from the time of forcible entry or detainer, or trespass, or of the notice of forfeiture, notice to quit or demand for possession, as the case may be; nothing in MCL 600.5750 stands for the proposition that, having litigated in the district court the issue regarding who has the right to the premises, the question can be relitigated de novo in a subsequent suit.

3. Courts — District Courts — Equitable Powers — Jurisdiction — Claims Arising under MCL 600.5701 *et seq*.

MCL 600.2932(1) provides that any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest

claimed by the plaintiff, whether the defendant is in possession of the land or not; MCL 600.8302(3) provides that, in an action under MCL 600.5701 *et seq.*, the district court may hear and determine an equitable claim relating to or arising under MCL 600.3101 *et seq.* (foreclosure), MCL 600.3301 *et seq.* (partition), or MCL 600.3801 *et seq.* (nuisance) or involving a right, interest, obligation, or title in land; MCL 600.8302(3) further provides that the district court may issue and enforce a judgment or order necessary to effectuate the court's equitable jurisdiction as provided in this subsection; district courts in Michigan have equitable jurisdiction and authority concurrent with that of the circuit court with respect to equitable claims arising under MCL 600.5701 *et seq.*, which concerns proceedings to recover possession of premises.

*Mark Bucchi* and *Edward A. Mahl* for Ronald E. Johnston, Rosemarie P. Johnston, and William R. Connolly.

*Allyn Smith Law Group, PC* (by *Eden J. Allyn*), for Sterling Mortgage & Investment Company, Citi Investments LLC, Citi Investment LLC, and Emre Uralli.

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM. In Docket No. 324855, plaintiffs-appellants, Ronald E. Johnston, Rosemarie P. Johnston, and William R. Connolly (collectively, Appellants), appeal as of right an order granting defendants-appellees, Sterling Mortgage & Investment Company, Citi Investments LLC, Citi Investment LLC, and Emre Uralli (collectively, Appellees), summary disposition in Appellants' quiet title action and denying Connolly's motion to intervene.

In Docket No. 325238, Appellants appeal by leave granted[1] an order of the circuit court that affirmed the

---

[1] *Sterling Mtg & Investment Co v Johnston*, unpublished order of the Court of Appeals, entered June 5, 2015 (Docket No. 325238).

district court's judgment granting Appellees possession of the property in a summary proceeding.[2]

Finding no errors warranting reversal, we affirm both orders.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves the foreclosure and attempted redemption of 22333 Taft Road in Northville, Michigan. Ronald and Rosemarie Johnston (the Johnstons) owned the home but were unable to pay the mortgages thereon and ultimately defaulted in 2013. The home was sold at sheriff's sale on November 5, 2013. Sterling Mortgage & Investment Company (Sterling) and Citi Investments LLC (Citi) were the purchasers at the sheriff's sale; neither were the Johnstons' mortgagees.

After purchasing the property at sheriff's sale, Sterling filed an Affidavit of Purchaser, declaring that the amount to redeem the property was $322,542.83 at an interest rate of 3.125% per annum and a per diem of $28.58. The redeeming party was warned that the amount could change in the event that Sterling paid additional amounts for items such as taxes and insurance. The Affidavit of Purchaser further provided:

> 6. Redemption figures are subject to final verification upon receipt of funds. Sterling Mortgage & Investment Co. reserves the right to adjust these figures, and refuse any funds that are not sufficient to pay the full amount, for any reason, including but not limited to: an error in calculation of the payoff amount, failure to account for additional unrecorded fees disbursed, or previously submitted dishonored funds. Additional disbursements made between the date of the payoff statement and the receipt of

---

[2] Citi Investment LLC and Uralli are not parties to the proceedings in Docket No. 325238. Therefore, when referring to Docket No. 325238, the term "Appellees" does not include these parties.

funds may also affect the final figures. Any redemption made without a written, current computation provided by Sterling Mortgage & Investment Co. will be subject to audit and potential subsequent rejection of funds.

7. Sterling Mortgage & Investment Co., is the designee responsible to assist an appropriate person redeeming the Property, in computing the exact amount required to redeem the Property, and receive redemption funds. If you choose to utilize this assistance, contact C. Switzer at Sterling Mortgage & Investment Co, 31333 W. 13 Mile . Rd., Farmington Hills, MI. Pursuant to statute, a fee of Two Hundred Fifty Dollars ($250.00) will be charged to use the assistance of Sterling Mortgage & Investment Co.

8. REDEMPTION FUNDS MUST BE REMITTED WITHIN THE REDEMPTION PERIOD, BY CASHIER'S CHECK ONLY. TO ORDER A REDEMPTION COMPU-TATION CALL: Sterling Mortgage & Investment Co., 31333 W. 13 Mile Rd, Farmington Hills, MI 48334, 248-539-3029.

9. Attention: REGISTER OF DEEDS: DO NOT accept redemption funds without a written, current redemption computation from Sterling Mortgage & Investment Co. Acceptance of funds without a Sterling Mortgage & Investment Co. computation will subject that redemption to an audit and potential subsequent rejection of the redemption funds.

On February 10, 2014, and upon the Johnstons' request, Sterling provided a letter setting forth the exact amount needed to redeem the property, which was $333,786.85. The letter was signed by "Kellie Carl."

The Johnstons e-mailed Kellie on April 28, 2014, asking for a "revised payoff for the last day of redemption." In response, Kellie wrote: "We require a $250.00 statement fee upfront to process a pay off a second time. Once payment of $250.00 is received in our office we will re-calculate the pay off for you through the date you request."

Instead of paying the fee, the Johnstons asked the Oakland County Register of Deeds (ROD) to prepare a statement setting forth the amount to redeem the property. On April 28, 2014, the ROD prepared a statement utilizing the final day of redemption (May 5, 2014), which was 182 days from the sheriff's sale. The ROD used the sheriff's deed amount ($322,542.83) and added the 3.125% interest rate ($5,025.92), the amount of insurance paid ($3,782.25), and the interest of insurance ($58.94) for a total redemption amount of $331,409.94. The statement included the provision: "PAYMENT MUST BE CERTIFIED CHECK OR CASHIER'S CHECK AND MADE PAYABLE TO: OAKLAND COUNTY REGISTER OF DEEDS."

On April 30, 2014, during the six-month redemption period, the Johnstons entered into a Purchase Agreement with William R. Connolly (Connolly). The Johnstons agreed to sell the property to Connolly for $341,409.94. To that end, Connolly deposited $350,000 into an account with the Johnstons' attorney, E. Dale Wilson. Wilson, in turn, enlisted First American Title Insurance Company (First American) to facilitate the closing and wired funds to be held in escrow by First American. Pat Flinchum was First American's Commercial Closing Officer. However, the purchase never took place because the Johnstons never redeemed the property.

On May 8, 2014, Wilson filed an Affidavit of Interest on Connolly's behalf, setting forth what was to become the crux of the issue in this case—the inability of the Johnstons to redeem the property:

> 6. On several occasions on May 1, 2014, May 2, 2014, and May 5, 2014, both the Affiant [Wilson] and Pat Flinchum, Commercial Closing Officer of First American . . . contacted the representative of Citi Investment

LLC, that being Emri [sic] Uralli, requesting the full redemption amount and a Quit Claim Deed for the Property to clear title.

7. On Thursday, May 1, 2014, Ms. Pat Flinchum of First American Title Insurance Company had a telephone conversation with Emri [sic] Uralli, who stated that he would provide such information on either May 2, 2014 or not later than Monday, May 5, 2014, to allow for the successful redemption of the Property.

8. On Friday, May 2, 2014 at 11:28 am, the Affiant emailed to Emri [sic] Uralli the fully prepared Redemption Certificate and Quit Claim Deed under which the Seller would redeem the Property at closing via payment to Citi Investment LLC by Ms. Pat Flinchum of First American . . . utilizing closing proceeds provided by the Purchaser in connection with his purposed acquisition of the Property.

9. Affiant followed up both via telephone calls and emails on May 5, 2014 requesting such information from Citi Investment LLC to allow Purchaser to complete its acquisition of the Property.

10. On May 5, 2014, prior to the expiration of the Redemption Period, Purchaser and Seller completed and executed all required documentation and Purchaser, via a wire transfer, provided Ms. Pat Flinchum of First American . . . with all closing proceeds and required documentation such that the Purchaser and Seller were ready, willing and able to close the transaction, subject only to receipt of the Redemption Certificate and Quit Claim Deed from Citi Investment LLC.

11. Citi Investment LLC's failure to provide such information is the sole reason that the Property was not able to be redeemed by Seller and sold to Purchaser, and as such, Citi Investment LLC should not be allowed to profit from its failure to provide information it is required to provide to allow the Seller its statutory right of redemption of the Property.

While the Affidavit of Purchaser had specifically designated *Sterling* as the entity to contact regarding payoff information and in particular "C. Switzer," Flinchum, in a separate affidavit, averred that she directed her inquiries "to Emre Uralli, who I knew from prior dealings to be the member of Plaintiffs/Appellees." Nevertheless, Uralli failed to respond to a number of e-mails from Flinchum and Wilson. On May 5, 2014, at 10:23 a.m., Flinchum faxed "Kelli" at Sterling the following:

> **We are going to payoff this loan today. Can you please email be [sic] the payoff amount and the wiring instructions asap?**
>
> **I had spoken with Emre from Citi on Thursday and he indicated that we would have the payoff this morning but it has not been received as of yet[.]**

Uralli never responded to the inquiries, so the money was never wired. In her affidavit, Flinchum laid the blame squarely on Sterling and Citi:

> 5. . . . I can confirm that, on May 5, 2014, I, the Johnstons and Mr. Connolly were ready, willing and able to complete the sale of the subject premises, and transmit funds to Plaintiffs/Appellees in whatever amount was needed to redeem the subject premises. What we required from Plaintiffs/Appellees were (a) a payoff letter setting the exact amount required to redeem, and (b) wiring instructions so the funds could be deposited in Plaintiffs/Appellees' account, instantly, via wire transfer. I can also confirm that, on and before May 5, 2014, Mr. Wilson and I made Plaintiffs/Appellees aware of the foregoing, via the written communications attached hereto and telephone calls as referenced in Mr. Wilson's [Affidavit of Interest]. I have no doubt that, Plaintiffs/Appellees were aware of the preparations that had been made for closing and redemption, that we stood at the ready to complete the transactions on May 5, 2014, and that, had they responded and supplied the above

noted payoff amount and wiring instructions, they would have received the payoff funds, on May 5, 2014. That was my task.

6. Although Plaintiffs/Appellees promised to cooperate in the redemption process during the work week ending May 2, 2014, neither I, and, to the best of my knowledge, anyone else acting on behalf of the Johnstons and Mr. Connolly, ever received a payoff amount or wiring instructions from Plaintiffs/Appellees. At no time did anyone advise me that Plaintiffs/Appellees objected to a wire transfer, or to receiving the redemption funds from First American. In particular, I never received [the May 5, 2014 fax from Sterling indicating that the redemption amount was $335,780.23], and never saw it until I was emailed a copy of it by Mr. Bucchi, on/about May 29, 2014. I note, too, that [the fax did] not contain wiring instructions. As such, we had no way to transmit the redemption funds, since we lacked both the proper redemption amount and wiring instructions. Given the pay-off amount reflected on [the fax], however, we certainly had sufficient funds on deposit to satisfy the redemption requirements.

A. THE SUMMARY PROCEEDING (OAKLAND CIRCUIT COURT CASE No. 2014-141116-AV)

The redemption period expired on May 5, 2014. Because the Johnstons still resided in the home and had not redeemed the property, Sterling filed a summary proceeding action in district court on May 14, 2014.

The Johnstons filed an answer and jury demand, indicating that Sterling had "unlawfully refused to participate in and allow the redemption of the subject premises." The answer mirrored Wilson's Affidavit of Interest and asked the district court to dismiss summary proceedings. At the same time, Connolly moved to intervene in the action, indicating that he had an interest in the property by virtue of the Purchase Agreement with the Johnstons.

A tenancy hearing was held on May 28, 2014. Appellees argued that, as set forth in the Affidavit of Purchaser, Appellants were required to use the designee—Sterling—to redeem the property. Appellees argued that there was never an actual attempt to pay funds; at most, Appellants expressed intention to redeem. Appellees also pointed out that Appellants could have simply redeemed the property by tendering funds to the Register of Deeds (ROD) in keeping with MCL 600.3240. Appellants' attorney indicated that the money was not simply submitted to the ROD because the Affidavit of Purchaser strictly forbade the ROD from accepting funds without a written computation from Sterling. The district court ruled:

> Well, I think the statute is clear and there was no redemption. And the fact that there's emails going back and forth saying, "Well, we want to redeem. What's the payoff?" is not a redemption and an intent is not a redemption. I think there has to be a tender of funds and that tender of funds should have been to the Register of Deeds or to Sterling Mortgage with proof that that was taking place. And if that didn't happen, it should have been posted at the Register of Deeds or the clerk's office for Oakland County. And if the clerk's office wasn't going to accept it then there should have been an action in the Circuit Court in order to force the redemption. None of which happened within the six months. I'm going to grant judgment for the plaintiff.

The district court also denied Connolly's motion to intervene: "I don't think there's any basis for the perspective [sic] purchaser to intervene in this case or . . . any standing."

Appellants filed their claims of appeal in the circuit court on June 3, 2014. The two appeals—Connolly's appeal from the order denying his motion to intervene and the Johnstons' appeal from the order of eviction—were consolidated.

On appeal in the circuit court, Appellants argued that *Lamb v Jeffrey*, 47 Mich 28; 10 NW 65 (1881), controlled. In that case, the issue was whether there had been a tender and a subsequent refusal to receive the tender. The Michigan Supreme Court held that even if there was no direct refusal to receive funds, the mortgagee "managed to *avoid* it for the purpose of obtaining the land on a foreclosure." *Id.* at 30 (emphasis added). Appellants claimed that, under *Lamb*, if the party entitled to the redemption funds refused or avoided tender of payment, it could not subsequently argue that the redemption period had expired. Appellants argued that the motive for refusing to accept the funds in this case was made clear when Appellees asked the district court to set a stay bond and indicated that the property was worth over $650,000, which was more than twice the sum to redeem.[3]

Appellants also cited *Karakas v Dost*, 67 Mich App 161; 240 NW2d 743 (1976). In that case, the plaintiffs on a land contract attempted to redeem the property by placing funds with their attorney to tender to the defendants, but the defendants' attorney made himself unavailable. This Court held that while the plaintiffs "failed to 'pay' defendants in accordance with the statute . . . valid tender is unnecessary where plaintiff is ready, willing and able to tender, but defendant, by his acts or words, shows that tender would not be accepted." *Id.* at 167. The Court concluded that summary disposition for the defendants was inappropriate where there were genuine issues of material fact regarding "whether defendants had manifested an intent to not accept tender of payment." *Id.* at 169. The

---

[3] In addition to posting a $1,000 bond, the Johnstons were ordered to pay monthly rent in the amount of $3,250.

*Karakas* Court also rejected the notion that the plaintiff could have simply deposited the funds with the court:

> We do not interpret that [State Court Administrative Office] form as requiring defendant either to seek to make payment to the court if he has been unable to tender payment to the plaintiff or attempt to pay the plaintiff if he has been unable to pay the court. Under such an interpretation, a defendant who at the end of the redemption period is willing and able to make payment might lose his opportunity to do so by unsuccessfully attempting to pay the plaintiff and then discovering he cannot reach the court in time to tender payment within the redemption period. We therefore read the statute and court form together as leaving defendant with the choice of making payment to either plaintiff or the court. [*Id.* at 169-170.]

Appellants argued that quibbling about the definition of "tender" was largely irrelevant: "[W]here an obligor stands ready, willing and able to effect redemption, announces as much to the obligee (i.e. makes an 'unconditional offer to perform coupled with manifest ability to carry out the offer'), but the obligee refuses, avoids or otherwise frustrates the delivery of the funds, it is the obligee who suffers the consequences, not the obligor who has attempted payment. In either event, the actual delivery of funds is not necessary." Appellants explained that by refusing to provide Appellants with the exact amount to redeem the property and the proper wiring information, Appellees showed an unwillingness to receive the funds. Appellants also argued that the district court's statement that Appellants should have redeemed through the ROD put them in a position of "having to try to win a last minute race to the courthouse (or the Register of Deeds office)" when it was Appellees' unlawful refusal to cooperate that put them in that position.

Appellants further argued that the district court erred when it denied Connolly's motion to intervene: Appellants contend that, in light of the parties' purchase agreement, Connolly had an interest in the property and should have been permitted to intervene pursuant to MCR 2.209(A)(3).

In response, Appellees maintained that there was no attempt to pay the redemption funds and that the trial court was obligated to enter judgment in their favor. Appellees argued that MCL 600.3240(1) clearly provides that one hoping to redeem property must *pay* the amount required to the purchaser, the purchaser's representative, or the ROD and that Appellants simply communicating that they were ready, willing, and able to redeem did not satisfy the statute. Appellees also noted that it was curious that Appellants insisted on attempting to communicate with Uralli, who was a member of Citi Investments, when neither Uralli nor Citi were appointed as the designee in the Affidavit of Purchaser. Appellees maintained that, unlike in *Lamb*, there was no refusal or avoidance because the funds were never proffered.

Appellees argued that, in any event, Appellants could have simply redeemed by submitting payment to the ROD. Again, unlike in *Lamb* or *Karakas*, Michigan's foreclosure by advertisement statutory scheme specifically permits a redeeming party to pay the ROD. Nothing prevented Appellants from physically delivering a cashier's check to the ROD.

Appellees also argued that Connolly had no right to intervene because his rights derived from Appellants. In failing to redeem the property, Appellants lost all interest in the property; Connolly had no independent interest in the property.

A hearing on the appeal was held on October 22, 2014. Appellants' attorney argued that the ROD in the present case was "the functional equivalent" of the courthouse in *Karakas*. Essentially, counsel argued that the party seeking to redeem had the privilege of electing between two alternatives and that Appellees obfuscated one of those alternatives. Counsel further noted the discrepancy of the amount needed to redeem, making it impossible for Appellants to confidently tender the proper amount. Counsel maintained that Appellants were entitled to a jury trial as to whether there was a frustration of tender.

In contrast, Appellees' attorney argued that the statute used the term "payment"—not the term "tender"— and that calculating payment was simply a "mechanical application," utilizing information contained directly in the Sheriff's Deed. When asked by the circuit court whether one who seeks to redeem has a unilateral right to determine whom to pay, counsel indicated: "I don't think you can manufacture the frustration by . . . unilaterally choosing." In response, Appellants' attorney indicated that Uralli led them to believe he would provide the relevant information.

The circuit court ruled: "The Court does not find that the conduct of the redeeming parties, the Appellants in this instance, amounted to payment, or ready, willing, and able does not equal payment, and the Court leaves it at that. The Court affirms."

On November 3, 2014, the circuit court entered an order affirming the district court's May 28, 2014 judgment. The circuit court denied Appellants' motion for reconsideration.

### B. THE QUIET TITLE ACTION
(OAKLAND CIRCUIT COURT CASE NO. 2014-142153-CH)

On August 1, 2014, while Appellants' appeal from

the summary proceeding was still pending, Appellants filed a "petition to quiet title to real property and complaint for damages" against Sterling, Citi-FLA, Citi-MI, and Uralli.[4] Appellants indicated that they "attempted to raise issues of frustration of redemption efforts, but [the district court judge] decided to avoid litigation of those issues in his Court."

Appellants' complaint alleged six counts:

• Count I (against Sterling and Citi-FLA): Irregular Foreclosure Process—Joint Purchasers of Property. It was improper that multiple parties purchased the property at the sheriff's sale. And, if multiple purchasers are permitted, then the deed should have reflected as much.

• Count II (against Sterling, Citi-FLA, and Citi-MI): Irregular Foreclosure Process—Defective Purchaser's Affidavit Filed by Sterling and no Affidavit of Purchaser Filed By Citi-FLA or Citi-MI. The Affidavit of Purchaser illegally directed the ROD to refuse to accept redemption funds without a calculated final payoff from Sterling and further incorrectly stated a per diem interest at $28.58.

• Count III (against Sterling): Irregular Foreclosure Process—Demand for Excessive Redemption Funds. The Affidavit of Purchaser overstated the per diem interest. The February 14, 2014 letter overstated the amount to redeem. Sterling failed to file a proper claim for insurance premiums.

• Count IV (against Sterling and Citi-FLA): Fraud, Negligence, and Unconscionable Conduct. The Affida-

---

[4] Appellants explained that Citi-FLA was recently dissolved and conducted business in Farmington. It was being "wound down" by Uralli, its principal, who resided in Grosse Pointe. Appellants further explained that Citi-MI may claim title to an undefined share of the property through a Quit Claim Deed from Citi-FLA to Citi-MI.

vit of Purchaser was intended to mislead Appellants as to how to redeem the property. Even if not rising to the level of fraud, Sterling's actions were unconscionable, and Sterling abused the trust and authority given to it under the law to advise homeowners of their redemption rights. Aside from the Affidavit of Purchaser, Sterling was obligated to see to it that a correct redemption figure was provided to Wilson and the title company.

• Count V (against Uralli, Citi-MI, and Sterling): Clogging—Unlawful Interference with Petitioners' Redemption Efforts. Appellees' interference resulted in the "clogging of the Equity of redemption." Even after sheriff's sale, rules of equity prohibited the frustration of redemption. "The steadfast refusal of Uralli, Sterling, and Citi-MI to provide a final redemption figure to any of the agents of the Petitioners, *after Sterling claimed in its Purchaser's Affidavit the exclusive right to provide the final redemption figure,* unlawfully interfered and burdened the exercise of the Johnston's [sic] efforts to save their home."

• Count VI (against Uralli, Sterling, and Citi-MI): Violation of MCL 600.3248. MCL 600.3248 penalizes individuals for refusing to accept redemption funds.

Appellees filed an answer to the petition, indicating that they would "stand mute" in light of the fact that Appellants' claims were barred by res judicata and that Appellants were collaterally estopped from relitigating the summary proceeding.

Appellees filed a motion for summary disposition on September 11, 2014, arguing that the action was barred by MCR 2.116(C)(6), (7), and (8). Appellees pointed out that the matter was already pending in circuit court on appeal from district court and that

Appellants' new action unnecessarily repeated the litigation. Appellees argued that, instead of waiting for the outcome of their pending appeal, Appellants "escalate[d] the dispute" further by filing the instant action, which was a vexatious and malicious attempt to harass Appellees and drive up the cost of litigation. Appellees wrote that Appellants "and their counsel are keenly aware that this matter merely duplicates the previous action, and unnecessarily squanders judicial resources and causes needless litigation costs to [Appellees]."

Appellants responded that this was not a situation in which another action was initiated between the same parties involving the same claim; rather, the parties were different, the causes of action were different, and the issues to be decided were different. While Appellants "attempted to litigate the issue of obstruction of redemption efforts" at the summary proceeding, the district court never addressed the issue. Because the district court was without authority to quiet title, Appellants were compelled to file the instant action.

A hearing on the motion for summary disposition was held on November 12, 2014. By that time, the circuit court had already decided the appeal from the summary proceeding and had affirmed the district court's ruling. The district court questioned Appellees' attorney about whether the district court had the authority to consider the equitable issues raised by Appellants. Citing MCL 600.8302, counsel argued that the district court had supplemental jurisdiction in the summary proceeding to hear and decide *all* the claims.

In contrast, Appellants' counsel argued that it was possible to have two separate proceedings because the summary proceeding was only about right to *possession*, whereas a quiet title action involved deciding who holds legal *title*. Therefore, in counsel's view, it would

be possible for the circuit court to affirm the district court on direct appeal and then subsequently enter judgment for Appellants in a quiet title action. Appellants' counsel argued that there was no res judicata effect, citing MCL 600.5750, which provides that summary proceedings are in addition to, and not exclusive of, other actions.

The circuit court and Appellants' counsel had the following exchange:

> *The Court*: Now -- now answer me this question; . . . what is distinct in your voice in the district court case from your voice in this case? Aren't you not expressing the same complaints, maybe with different titles, maybe with different commas, but you're basically saying I was ready, willing, and able there, but for frustration, and you're saying the same thing, . . . I was ready, willing, and able there, but for frustration. . . . [H]ow is this complaint not consumed, eclipsed, super -- not superseded, but the . . . same exact thing that you voiced in the district court?
>
> *Mr. Mahl* [co-counsel for Appellants]: Judge, first of all, we have six counts in this -- in this --
>
> *The Court*: I know. I know. Just just give me an example of something that's pled here that is independent and distinct from what was claimed there?
>
> *Mr. Mahl*: Four of our counts. And let me call your attention, first of all, because it's [the] clearest one, to count number six. Count number six is not -- does not seek title. Count number six is for damages; it's a tort claim. It's a tort claim for refusal of tender.
>
> *The Court*: Now -- now answer me this question, counsel, because I appreciate you're citing to some particularly pled distinction, but I'm asking at the root what is distinct? The voice, the basis, the root of your tort claim is frustration by sheriff's deed grantee or agents, correct?
>
> *Mr. Mahl*: Yes, and --

*The Court*: The voice of your landlord/tenant defense was frustration by sheriff's deed grantee or agent, correct?

*Mr. Mahl*: Of the right to redeem.

*The Court*: Yeah, the same -- at the bottom of the river is the same current, and it's the same argument; it might take different forms from the surface, but at the root, it's the same essence, isn't it?

The circuit court granted the motion for summary disposition, adopting "the reasons from the moving party in this case . . . . I'm not going to belabor the record with rationale. The Court will just leave it simple like that." On November 14, 2014, the circuit court entered an order granting Appellees summary disposition and denying Appellants' motion to amend the complaint.

## II. ANALYSIS

### A. DOCKET NO. 325238

Appellants argue that the lower courts erred in granting Appellees possession in the summary proceeding and denying Connolly's motion to intervene. We disagree.

Both parties concede that the district court found that Appellees were entitled to judgment as a matter of law, which was the equivalent of granting summary disposition pursuant to MCR 2.116(C)(10). "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A (C)(10) motion tests the factual sufficiency of a complaint. "In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence

submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Klein v HP Pelzer Auto Sys, Inc,* 306 Mich App 67, 75; 854 NW2d 521 (2014) (citations omitted).

This case involves a determination of whether Appellants "paid" the redemption funds under MCL 600.3240. Issues of statutory interpretation are reviewed de novo on appeal. *Whitman v City of Burton,* 493 Mich 303, 311; 831 NW2d 223 (2013).

> When interpreting a statute, the primary goal is to give effect to the intent of the Legislature by construing the language of the statute. When the plain and ordinary meaning of statutory language is clear, judicial construction is neither necessary nor permitted. When a statute does not expressly define a term, courts may consult dictionary definitions to ascertain its ordinary and generally accepted meaning. [*Pace v Edel-Harrelson,* 499 Mich 1, 6-7; 878 NW2d 784 (2016) (citations omitted).]

Contrary to Appellants' arguments, we hold that the lower courts did not err in granting Appellees possession in the summary proceeding and denying Connolly's motion to intervene.

MCL 600.3240 provides, in relevant part:

> (1) A purchaser's deed under section 3232 is void if the mortgagor, the mortgagor's heirs or personal representative, or any person that has a recorded interest in the property lawfully claiming under the mortgagor or the mortgagor's heirs or personal representative redeems the entire premises sold by *paying* the amount required under subsection (2) and any amount required under subsection (4), within the applicable time limit prescribed in subsections (7) to (12), to the purchaser or the purchaser's

personal representative or assigns, or to the register of deeds in whose office the deed is deposited for the benefit of the purchaser.

\* \* \*

(14) The register of deeds of a county with a population of more than 750,000 and less than 1,500,000, at the request of a person entitled to redeem the property under this section, shall determine the amount necessary for redemption. In determining the amount, the register of deeds shall consider only the affidavits recorded under subsections (2) and (4). A county, register of deeds, or employee of a county or register of deeds is not liable for damages proximately caused by an incorrect determination of an amount necessary for redemption under subsection (2). [Emphasis added.]

The statutory language is clear. In order to redeem the property, Appellants were required to *pay* the amount required to Appellees or the ROD. *Black's Law Dictionary* (9th ed) defines "payment" as: "**1.** Performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation. . . . **2.** The money or other valuable thing so delivered in satisfaction of an obligation."

Appellants acknowledge that there was no *payment* or *delivery* of funds, but they argue that payment is not actually required when a proper "tender" has been made. *Black's Law Dictionary* (9th ed) defines "tender" as:

**1.** A valid and sufficient offer of performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation <a tender of delivery>. . . . The tender may save the tendering party from a penalty for nonpayment or nonperformance or may, if the other party unjustifiably refuses the tender, place the other party in default.

\* \* \*

> ***tender of performance.*** . . . An obligor's demonstration of readiness, willingness, and ability to perform the obligation . . .

However, nowhere in MCL 600.3240 is the term "tender" used. Appellants find the term in MCL 600.3248, which provides: "If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action . . . ." Appellants focus on the wrong statute: MCL 600.3248 addresses a party's civil liability for refusing tender or payment, but it is MCL 600.3240 that specifically sets forth the process to be used in redeeming foreclosed property.

Appellants also cite *Lamb* and *Karakas*, both of which mention "tender." In *Lamb*, the issue was whether there had been a tender and a subsequent refusal to receive the tender:

> The substantial questions, then, are whether complainant made a tender as he claims, and if so, whether Mrs. Jeffrey refused to receive it. Upon this point the testimony is hopelessly in conflict. We are forced to the conclusion, however, that complainant did make a tender as he claims he did, and that Mrs. Jeffrey, if she did not directly refuse to comply, managed to avoid it for the purpose of obtaining the land on a foreclosure which should cut off the mortgage of complainant. The complainant is therefore entitled to the relief he prays. [*Lamb*, 47 Mich at 30.]

*Lamb* is distinguishable from the case at bar because it predated MCL 600.3240 and, therefore, did not involve the application or interpretation of specific statutory language.

In *Karakas*, this Court used the term "tender" when discussing a situation in which purchasers on a land contract were frustrated from redeeming property from foreclosure. This Court concluded that the lower court had erred in finding that the plaintiffs had failed to state a claim upon which relief could be granted:

> Although the trial judge in the instant case held that plaintiffs had failed to state a cause of action, we disagree. They stated a cause of action if the factual allegations contained in their complaint show that they are entitled to redemption. The statute governing redemption in this situation, MCLA 600.5744(6); MSA 27A.5744(6) reads:
>
> > When the judgment for possession is for non-payment of money due under a tenancy or for nonpayment of moneys required to be paid under or any other material breach of an executory contract for purchase of the premises, the writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured.
>
> Although there is presently no case law interpreting the statutory language "is paid", case law interpreting similar statutory language indicates that actual transfer of the entire amount of money due is generally required for compliance with redemption statutes. A mere showing of ability and intent to pay is insufficient. Thus, plaintiffs, in the case at bar, failed to "pay" defendants in accordance with the statute. Nevertheless, case law involving other situations requiring tender of payment holds that valid tender is unnecessary where plaintiff is ready, willing and able to tender, but defendant, by his acts or words, shows that tender would not be accepted. Consequently, in the instant case, if plaintiffs' factual allegations indicate that tender was not made because defendants prevented it or indicated they would not accept it, plaintiffs' complaint states a cause of action.

Because plaintiffs' complaint includes allegations that defendants did not accept payment and that such conduct was wrongful, we find that plaintiffs' pleadings do state a claim upon which relief can be granted. Therefore, we hold that the trial judge committed reversible error in ordering summary judgment under GCR 1963, 117.2(1) on the redemption issue. [*Karakas*, 67 Mich App at 166-168 (citations omitted).]

The Court also concluded that there were genuine issues of material fact that precluded summary disposition for lack of factual merit:

We believe plaintiffs' affidavits in the case at bar raise a genuine issue of material fact regarding whether defendants had manifested an intent to not accept tender of payment. Plaintiffs' attorney's affidavit alleges he was unable to complete the redemption transaction because [defendants' attorney] had been purposely making himself unavailable. In addition, the affidavit alleges that [the attorney] had told plaintiffs' attorney that [defendants] wanted to retain the property and, consequently, [the attorney] was unauthorized to accept payment. The affidavit of plaintiffs' attorney's law partner alleges that [defendants' attorney] also had told the law partner that [defendants] wanted to keep the property, and [defendants' attorney], therefore, could not accept payment. Because these allegations, if proved, would entitle plaintiffs to relief under the earlier mentioned theory that tender of payment is not required where defendant has shown it would not be accepted, we reverse the trial court's order of summary judgment and remand for trial on the redemption issue. [*Id.* at 169.]

*Karakas* is distinguishable from the case at bar because it involved a land contract and did not involve the statutory right to redeem in MCL 600.3240. Additionally, and importantly, the Court used the terms "pay" and "tender" interchangeably. It did not distinguish between the two terms because it did not need to. The plaintiffs' attorney in *Karakas* actually went in

search of the defendants' attorney *with check in hand* to redeem the property. *Karakas*, 67 Mich App at 164. Appellants' attempt to distinguish "tender" and "payment" by citing *Karakas* is undercut by the facts of the case. Therefore, even assuming that the requisite money was assembled and placed in the hands of people tasked to deliver it and that offers of payment were communicated, the redemption funds were not "paid."

Appellants further argue that, if payment is required, their efforts were frustrated. Again, Appellants cite *Lamb* and *Karakas*. In *Lamb*, the Michigan Supreme Court held that even if there was no direct refusal to receive funds, the mortgagee "managed to *avoid* it for the purpose of obtaining the land on a foreclosure." *Lamb*, 47 Mich at 30 (emphasis added). And, as just discussed, in *Karakas*, the plaintiffs on a land contract attempted to redeem the property by placing funds with their attorney to tender to the defendants, but the defendants' attorney made himself unavailable after his clients told him they did not want the plaintiffs to redeem. This Court held that "valid tender is unnecessary where plaintiff is ready, willing and able to tender, but defendant, by his acts or words, shows that tender would not be accepted," *Karakas*, 67 Mich App at 167, and that summary disposition for the defendants was inappropriate when there were genuine issues of material fact regarding "whether defendants had manifested an intent to not accept tender of payment," *id.* at 169.

Once again, neither *Lamb* nor *Karakas* involved the application or interpretation of MCL 600.3240. That is a critical distinction, especially in the *Karakas* case, in which the statute explicitly required that the redemption payment be made "to the plaintiff." The *Karakas*

Court rejected the notion that the plaintiff could have simply deposited the funds with the court:

> At this juncture, we wish to explain that we disagree with defendants' contention that plaintiffs should have tendered payment to either [the defendants] or the court, and because they did neither, they are not entitled to redemption. Although we can find no case law interpreting the statutory phrase "is paid to the plaintiff" (MCLA 600.5744(6); MSA 27A.5744(6)), the judgment notice approved by the Michigan Supreme Court Administrator specifies that the amount of the judgment may be paid to either the district court or the plaintiff (in the summary proceedings). We do not interpret that *form* as requiring defendant either to seek to make payment to the court if he has been unable to tender payment to the plaintiff or attempt to pay the plaintiff if he has been unable to pay the court. Under such an interpretation, a defendant who at the end of the redemption period is willing and able to make payment might lose his opportunity to do so by unsuccessfully attempting to pay the plaintiff and then discovering he cannot reach the court in time to tender payment within the redemption period. We therefore read the statute and court form together as leaving defendant with the choice of making payment to either plaintiff or the court. [*Karakas*, 67 Mich App at 169-170.]

In contrast, MCL 600.3240(1) specifically provides that a sheriff's deed is void if the property is redeemed "by paying the amount required . . . within the applicable time limit prescribed . . . to the purchaser or the purchaser's personal representative or assigns, *or to the register of deeds* in whose office the deed is deposited for the benefit of the purchaser." (Emphasis added.) Thus, in contrast to the State Court Administrative Office form in *Karakas*, MCL 600.3240 specifically provides that payment may be made to the ROD.

Appellants argue that they did not feel secure in submitting payment to the ROD because Appellants

had received more than one payoff figure and because Appellees were not bound by the ROD's calculations. MCL 600.3240(2) and (14) provide:

(2) The amount required to be paid under subsection (1) is the amount that was bid for the entire premises sold, interest from the date of the sale at the interest rate provided for by the mortgage, the amount of the sheriff's fee paid by the purchaser under section 2558(2)(q), and an additional $5.00 as a fee for the care and custody of the redemption money if the payment is made to the register of deeds. . . . The purchaser shall provide an affidavit with the deed to be recorded under this section that states the exact amount required to redeem the property under this subsection, including any daily per diem amounts, and the date by which the property must be redeemed shall be stated on the certificate of sale. *The purchaser may include in the affidavit the name of a designee responsible on behalf of the purchaser to assist the person redeeming the property in computing the exact amount required to redeem the property.* The designee may charge a fee as stated in the affidavit and may be authorized by the purchaser to receive redemption money. The purchaser shall accept the amount computed by the designee.

\* \* \*

(14) The register of deeds of a county with a population of more than 750,000 and less than 1,500,000, at the request of a person entitled to redeem the property under this section, shall determine the amount necessary for redemption. In determining the amount, the register of deeds shall consider only the affidavits recorded under subsections (2) and (4). A county, register of deeds, or employee of a county or register of deeds is not liable for damages proximately caused by an incorrect determination of an amount necessary for redemption under subsection (2). [Emphasis added.]

Appellants point to the legislative history and note that the language "The purchaser shall accept the

amount calculated by the register of deeds under this section" was specifically excluded. Appellants write: "Thus, subsection (14) allows purchasers to challenge and defeat the ROD's determination and, if a prospective redeemer (Appellants, herein) had relied on an errant determination of the ROD, he may **not recover damages**." However, a plain reading of the statute does not support Appellants' claim that Appellees had the right to reject a payoff to the ROD; instead, it simply insulates the ROD from any incorrect calculation. Additionally, in response to Appellees' allegation that Appellants contacted the wrong individual, Appellants acknowledge the benefit of utilizing the ROD:

> In addition, it is ironic to note that MCLA 600.3240(14) was proposed and enacted, in part to remedy "The Apparent Problem" i.e. that " . . . lenders have not responded at all, or have responded inaccurately, when asked how much is owed." . . . In other words, one of the perceived shortcomings of MCLA 600.3240, in 2009, was that certain homes were being lost to foreclosure because lenders (and, by extension, purchasers at sheriffs' sales) were occasionally less than forthcoming when distressed homeowners sought to redeem their homes from foreclosure. As noted in the Legislative Analysis, this reticence was attributable to the financial interest of the lender in seeing homes foreclosed upon. . . . Thus, in effect, Appellees['] argument concerning communications with Appellees would turn this remedial legislative initiative on its head, creating a trap for homeowners struggling to timely redeem their homes, and allowing Appellees to benefit from withholding information, one of the specific problems the Legislature set out to remedy.

Therefore, Appellants recognize that payoff to the ROD is often a wise choice for one seeking to redeem because it obviates the need to contact the purchaser directly.

Appellants did not contact the individual listed on the Affidavit of Purchaser. In her affidavit, Flinchum

(the closing agent) averred that she directed her inquiries "to Emre Uralli, who I knew from prior dealings to be the member of Plaintiffs/Appellees." Therefore, in spite of the clear designation that Sterling—more specifically C. Switzer—was the contact person that would help in calculating the payoff amount, Appellants did not use the designated contact person. Appellants seem to argue that, absent an objection from Appellees, it was perfectly acceptable to use Uralli. In so doing, Appellants impose an affirmative duty on Appellees where none exists.

Finally, because Connolly's rights are derivative of Appellants' and because Appellants' substantive arguments fail, there was no error in denying Connolly's motion to intervene.

### B. DOCKET NO. 324855

Appellants argue that the circuit court erred in granting summary disposition because the summary proceeding and appeal did not bar Appellants' subsequent quiet title action. We disagree.

Summary disposition is appropriate if a claim is barred by a prior judgment. MCR 2.116(C)(7); *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). "Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

Appellants' quiet title action was barred by res judicata and collateral estoppel. "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial re-

sources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 599; 773 NW2d 271 (2009), overruled on other grounds by *Admire v Auto-Owners Ins Co*, 494 Mich 10 (2013).

> Consequently, res judicata . . . bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.
>
> Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999) (citations omitted).]

Similarly,

> [c]ollateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. A decision is final when all appeals have been exhausted or when the time available for an appeal has passed. [*Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) (citations omitted).]

Here, the summary proceeding involved the same parties as the present case (or their privies), the case was decided on its merits, and Appellants raised the argument that Appellees frustrated their attempts to redeem the property; therefore, res judicata and collateral estoppel precluded Appellants from bringing the quiet title action.

Appellants argue that they were not required to litigate all issues relating to title because the district court proceeding was merely a holdover proceeding. MCL 600.5714(1)(g) provides: "[a] person entitled to possession of premises may recover possession by summary proceedings . . . [w]hen a person continues in possession of premises sold by virtue of a mortgage or execution, after the time limited by law for redemption of the premises." Appellants maintain that such an action does not bar future actions, citing MCL 600.5750, which provides, in relevant part:

> The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under this chapter does not merge or bar any other claim for relief . . . . The plaintiff obtaining a judgment for possession of any premises under this chapter is entitled to a civil action against the defendant for damages from the time of forcible entry or detainer, or trespass, or of the notice of forfeiture, notice to quit or demand for possession, as the case may be.

This provision does not help Appellants. The statute merely provides that possession is not a landlord's only remedy. See *1300 Lafayette East Coop, Inc v Savoy*, 284 Mich App 522, 530; 773 NW2d 57 (2009). "Nothing in the statute . . . stands for the proposition that, having litigated in the district court the issue who has the right to the premises, that question can be relitigated de novo in a subsequent suit. Such an approach would empty MCL 600.5701 *et seq.*; MSA 27A.5701 *et seq.* of all significance." *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001).

Most of Appellants' arguments are based on the faulty reasoning that the district court did not have jurisdiction to decide the issues raised in the quiet title action. Appellants believe that only the circuit court

had jurisdiction to decide the issue of title. They cite MCL 600.2932(1), which provides, "Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not."

But Appellants overlook the district court's specific jurisdiction. MCL 600.8302(3) provides: "In an action under [MCL 600.5701 *et seq.*], the district court may hear and determine an equitable claim relating to or arising under chapter 31 [foreclosure], 33 [partition], or 38 [nuisance] or involving a right, interest, obligation, or title in land. The court may issue and enforce a judgment or order necessary to effectuate the court's equitable jurisdiction as provided in this subsection, including the establishment of escrow accounts and receiverships." This Court has explained:

> District courts in Michigan have exclusive jurisdiction over civil matters where the amount in controversy does not exceed $25,000. MCL 600.8301(1). In addition, district courts have "equitable jurisdiction and authority concurrent with that of the circuit court" with respect to equitable claims arising under chapter 57 of the Revised Judicature Act (RJA), MCL 600.5701 *et seq.*, which concerns proceedings to recover possession of premises. See MCL 600.8302(1) and (3).
>
> . . . MCL 600.8302(3) is a "more specific" grant of jurisdictional authority than the "general grant of jurisdictional power" found in MCL 600.8301(1). Because [MCL 600.8302(3)] is specific, it takes precedence over [MCL 600.8301(1)]. When a district court's action flowed from its power arising under Chapter 57 of the RJA [MCL 600.5701 *et seq.*], its actions are within the scope of [MCL 600.8302(3)], and [MCL 600.8301(1)] is inapplicable.

[*Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 560-561; 840 NW2d 375 (2013) (citations and quotation marks omitted).]

The Court further explained the difference between want of jurisdiction and errors in exercising jurisdiction:

Even assuming arguendo that [the] monetary component of [a] stipulated consent judgment exceeded the district court's authority, defendants still could not properly collaterally attack the entry of that judgment. As the Michigan Supreme Court explained in *Bowie v Arder*, 441 Mich 23, 49; 490 NW2d 568 (1992), quoting *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 545; 260 NW 908 (1935) (citation omitted):

"Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked."

In other words, "lack of subject matter jurisdiction can be collaterally attacked[, whereas] the exercise of that jurisdiction can be challenged only on direct appeal." [*Clohset*, 302 Mich App at 563-564.]

This issue was recently addressed in an unpublished decision. "Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1); *In re Application of Indiana Mich Power Co*, 275 Mich App 369, 380; 738 NW2d 289 (2007), they may, however, be considered instructive or persuasive." *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). In *Bank of America v 5-3*

*Greenway Trust*, unpublished opinion per curiam of the Court of Appeals, issued December 22, 2015 (Docket No. 324043), pp 8-9, this Court dealt with the same challenge in a property dispute between a bank and a trust:

> The bank devotes a great deal of time to the argument that only a circuit court has jurisdiction to determine title to property in quiet-title actions, MCL 600.2932(1), and that a district court only has jurisdiction to determine the right to possession. And therefore, anything determined in the district court or encompassed by the district court possession judgment has no bearing whatsoever on the circuit court's determination of title, which must be independently assessed by the circuit court. This argument lacks merit. First, it fails to appreciate that some possession judgments are necessarily predicated on an underlying title determination, as is the case here; the right of possession by the trust was dependent on its equitable title becoming absolute or legal title on the basis of expiration of the redemption period absent redemption. Second, the bank's argument ignores MCL 600.8302(3), which, again, provides that "[i]n an action under chapter 57, the district court may hear and determine an equitable claim . . . involving a right, interest, obligation, or *title* in land." (Emphasis added.) Finally, the fact that a circuit court has jurisdiction over quiet-title actions to determine interests in land does not mean that previously-entered, unchallenged, and valid possession judgments are irrelevant and have no bearing on the proper determination of title by the circuit court. This is made exceptionally clear in the context of former MCL 600.3240(13), which specifically provided that title vests with entry of a possession judgment. The circuit court was not entitled to disregard this statutory mandate when resolving the quiet-title dispute, considering that there was no jurisdictional problem that would have allowed a collateral attack. Aside from former MCL 600.3240(13), given the unchallenged default possession judgment, it became established that the bank had wrongfully held over following the redemp-

tion period. And the circuit court was required, considering the inability to mount a collateral attack, to accept that premise in rendering its quiet-title ruling. Of course, accepting that premise dictated a ruling quieting title in favor of the trust. [Citations omitted.]

Another unpublished opinion is analogous to the case at bar. *Katulski v CPCA Trust I*, unpublished opinion per curiam of the Court of Appeals, issued January 20, 2015 (Docket Nos. 313790 and 316360), pp 1-2, had the same appellate posture as this case:

In Docket No. 316360, CPCA Trust I (CPCA) filed a complaint seeking to evict the Katulskis from their property following a foreclosure by advertisement. The district court entered a judgment awarding CPCA possession and the Katulskis appealed to the circuit court. The circuit court affirmed, and the Katulskis now appeal that ruling by leave granted. In Docket No. 313790, the Katulskis filed a separate action against CPCA in circuit court, alleging various deficiencies in the foreclosure process and the underlying mortgage. The circuit court granted CPCA's motion for summary disposition, and the Katulskis now appeal that ruling by right. [Citation omitted.]

This Court rejected the Katulskis' claim that the circuit court erred in finding that res judicata barred them from contesting the foreclosure in Docket No. 313790:

We conclude that the circuit court correctly ruled that res judicata barred the Katulskis' attacks on the foreclosure in Docket No. 313790. When CPCA sought summary disposition on the basis of res judicata, the district court's August 8, 2011 judgment awarding it possession of the real property constituted a final decision on the merits. The district court action also involved the same parties who participated in LC Docket No. 313790, the subsequent and separate circuit court action. The Katulskis' separate circuit court action challenging the foreclosure process involved legal "issues . . . [that] were or could have

been decided in the prior" district curt [sic] summary proceeding, specifically, CPCA's compliance with the statutes governing foreclosure by advertisement and its entitlement to possession of the real property. In the summary possession action, the Katulskis disputed that CPCA had complied "with the Michigan [s]tatutes regarding foreclosure by advertisement and thus are not entitled to possession of the property." In April 2012, the Katulskis filed their motion to set aside the judgment of possession on the basis of fraud, but the district court did not specifically rule on the merits of the motion. The summary possession action did address and decide whether CPCA properly pursued foreclosure by advertisement and was entitled to possession of the property, and the Katulskis attacked the foreclosure on the same grounds asserted in that prior action. [*Id.* at 17 (citations omitted).]

Similarly, here, Appellants' claim that Appellees frustrated their attempt to redeem the property was decided in the district court. Therefore, the circuit court properly determined that Appellants' quiet title action was barred by the doctrine of res judicata.

Affirmed.

K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ., concurred.