LAKE FOREST PARTNERS 2, INC v DEPARTMENT OF TREASURY

Docket No. 257417. Submitted February 8, 2006, at Lansing. Decided June 6, 2006, at 9:05 a.m. Leave to appeal sought.

Lake Forest Partners 2, Inc., petitioned the Tax Tribunal for review after the Department of Treasury assessed a deficiency under the State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq.* At issue were numerous transactions in which the petitioner had agreed to sell buyers unimproved lots and subsequently build homes on those lots. Each purchase agreement separately stated the consideration for the lot and the consideration to build the home, and also provided that the petitioner would deliver a warranty deed to the buyer after completion of the home and issuance of a certificate of occupancy. When each deed was recorded, the petitioner paid a transfer tax based on the value of the lot at the time the purchase agreement was executed. The department had assessed the tax deficiency after concluding that the petitioner should have paid a transfer tax based on the value of the lot and the home. The tribunal affirmed the assessment, and the petitioner appealed.

The Court of Appeals *held*:

The SRETTA imposes a tax based on the value of the property being transferred. While the transfer tax is paid when certain instruments are recorded, MCL 207.523(1), the transfer tax is assessed on the current or fair market worth at the time of the transfer, MCL 207.522(e). While the purchase agreements were not recorded, each purchase agreement nonetheless transferred an equitable interest in the property. Therefore, the transfer tax is assessed on the basis of the value of the property when the purchase agreement is executed.

Reversed and remanded.

DAVIS, J., dissenting, stated that the SRETTA clearly articulates a legislative intent to impose a tax based on the value of the property at the time title to the property is legally transferred, in this case, the transfer of legal title to the improved lot with the house on it. MCL 207.523(1) imposes a tax on written instruments when they are recorded. In this case, only the deeds, and not the purchase agreements, were recorded. The only taxable instru-

ments are those actually recorded. The statute, read as a whole, indicates that the Legislature did not intend to include equitable transfers in computing the transfer tax. The tribunal's decision should be affirmed.

TAXATION — REAL ESTATE TRANSFER TAX — PROPERTY.

> The state real estate transfer tax for a transaction involving a purchase agreement that includes both the sale of unimproved property and an executory contract to build a home on that property is assessed on the basis of the value of the property when the parties execute the purchase agreement, despite the fact that the transfer tax is paid when the warranty deed is subsequently recorded after construction of the home is completed (MCL 207.522[e], 207.523[1], 207.525).

*Stefan B. Herpel, P.C.* (by *Stefan B. Herpel*), for the petitioner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Roland Hwang*, Assistant Attorney General, for the respondent.

Amici Curiae:

*McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland* and *Melissa A. Hagen*), for the Michigan Association of Home Builders.

*Honigman Miller Schwartz and Cohn LLP* (by *Alan M. Valade* and *Regis A. Carozza*) for Wexford Builders, Inc.

Before: WILDER, P.J., and ZAHRA and DAVIS, JJ.

ZAHRA, J. Petitioner appeals as of right the judgment of the Tax Tribunal affirming respondent's assessment under the State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq*. This case addresses the propriety of assessments under the SRETTA for purchase agreements that include both the sale of unim-

proved property and an executory contract to build a
home on that property. We conclude that the value of
the property for purposes of assessment of the state real
estate transfer tax is determined at the time the parties
execute the purchase agreement. We reverse and re-
mand.

### A. FACTS AND PROCEEDINGS

This case involves 45 transactions in which peti-
tioner agreed to sell buyers certain unimproved lots and
subsequently build homes on those lots. In each trans-
action, a single document entitled "purchase agree-
ment" provided the terms of the sale of the unimproved
lot and the terms of the agreement to build a home on
that lot. The parties stipulated that the purchase agree-
ment separately stated the consideration for the lot and
the consideration to build the home. The purchase
agreement also provided that after petitioner completed
construction of the home and a certificate of occupancy
was issued, petitioner would deliver a warranty deed to
the buyer. When the deed was recorded, petitioner paid
real estate transfer taxes based on the value of the lot as
it existed when the purchase agreement was executed.[1]

In May 2002, respondent Department of Treasury
determined that, under the SRETTA, petitioner failed
to pay the appropriate transfer taxes in each of the 45

---

[1] The same 45 transactions were initially the subject of a circuit court
case, *Washtenaw Co v Lake Forest Partners 2, Inc*, LC No. 00-579-CH. In
that case, the county argued that, under the real estate transfer tax act
(RETTA), MCL 207.501 *et seq.*, which essentially mirrors the SRETTA,
petitioner should have paid the county on the basis of the value of the lot
and the home. The case was resolved by a consent order, under which the
parties agreed that as long as petitioner used separate contracts in these
types of transactions, i.e., one for the sale of the lot and one for the
construction of the home, the RETTA tax would be assessed only on the
basis of the value of the lot.

transactions. Respondent concluded that petitioner should have paid transfer taxes based on the value of the lot and the home. Respondent ordered petitioner to satisfy a tax deficiency of $65,968, plus a penalty ($16,492) and interest. Petitioner filed its petition with the Tax Tribunal for reconsideration of respondent's assessment, which the Tax Tribunal denied.

### B. STANDARD OF REVIEW

This Court reviews decisions of the Tax Tribunal only to determine whether the tribunal committed an error of law or applied the wrong legal principles. Const 1963, art 6, § 28; *AERC of Michigan, LLC v City of Grand Rapids,* 266 Mich App 717, 722; 702 NW2d 692 (2005), citing *Schultz v Denton Twp,* 252 Mich App 528, 529; 652 NW2d 692 (2002). Also, this Court reviews the interpretation of statutes, which is a question of law, de novo. *AERC of Michigan, supra* at 722, citing *Florida Leasco, LLC v Dep't of Treasury,* 250 Mich App 506, 507; 655 NW2d 302 (2002).

### C. ANALYSIS

MCL 207.523 provides:

(1) There is imposed, in addition to all other taxes, a tax upon the following written instruments executed within this state when the instrument is recorded:

(a) Contracts for the sale or exchange of property or any interest in the property or any combination of sales or exchanges or any assignment or transfer of property or any interest in the property.

(b) Deeds or instruments of conveyance of property or any interest in property, for consideration.

(2) The person who is the seller or grantor of the property is liable for the tax imposed under this act.

The state real estate transfer tax is "levied at the rate of
$3.75 for each $500.00 or fraction of $500.00 of the total
value of the property being transferred." MCL 207.525.
" 'Value' means the current or fair market worth in
terms of legal monetary exchange *at the time of the
transfer*." MCL 207.522(e) (emphasis added). While the
transfer tax is paid "when the instrument is recorded,"
MCL 207.523(1), the transfer tax is assessed on "the
current or fair market worth . . . at the time of the
transfer," MCL 207.522(e).

" '[O]ur primary task in construing a statute, is to
discern and give effect to the intent of the Legisla-
ture.' " *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d
648 (2004), quoting *Sun Valley Foods Co v Ward*, 460
Mich 230, 236; 596 NW2d 119 (1999). " 'The words of a
statute provide "the most reliable evidence of its in-
tent . . . ." ' " *Neal, supra* at 665, quoting *Sun Valley,
supra* at 236, in turn quoting *United States v Turkette*,
452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).
"Unless defined in the statute, every word or phrase of
a statute will be ascribed its plain and ordinary mean-
ing." *Robertson v DaimlerChrysler Corp*, 465 Mich 732,
748; 641 NW2d 567 (2002). " '[C]ourts must give effect
to every word, phrase, and clause in a statute and avoid
an interpretation that would render any part of the
statute surplusage or nugatory.' " *Jenkins v Patel*, 471
Mich 158, 167; 684 NW2d 346 (2004) (citation omitted).
"[P]rovisions not included by the Legislature should
not be included by the courts." *Polkton Charter Twp v
Pellegrom*, 265 Mich App 88, 103; 693 NW2d 170 (2005)
(citation omitted).

Each of the 45 transactions involved the execution of
two written instruments: a purchase agreement and a
deed. Of those two instruments, only the deed was
recorded, and, thus, only the deed was taxed. MCL

207.523(1). Although the purchase agreements were not recorded, they are nonetheless "[c]ontracts for the sale or exchange of property" under MCL 207.523(1)(a). Because the transfer tax may be imposed on purchase agreements, we conclude that upon the execution of a purchase agreement, some interest in the property is transferred under the SRETTA. Respondent's contention that interest in the property is transferred only by execution of the deed ignores the language of MCL 207.523(1)(a). The transfer tax is assessed on "the current or fair market worth . . . at the time of the transfer." MCL 207.522(e). We therefore conclude that the transfer tax is assessed on the basis of the value of the property when the purchase agreement is executed.[2]

Further, it is well-settled that the execution of a purchase agreement transfers an interest in property. See *Graves v American Acceptance Mortgage Corp (On Rehearing)*, 469 Mich 608, 614; 677 NW2d 829 (2004); *Stevens v DeBar*, 229 Mich 251, 253; 200 NW 978 (1924); *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999); *Pittsfield Charter Twp v City of Saline*, 103 Mich App 99, 103; 302 NW2d 608 (1981). And although the purchase agreements transfer only an

---

[2] We note that, under MCL 207.526, the purchase agreements may arguably be classified as "written instruments and transfers of property" that are exempt from the tax. Specifically, the purchase agreements may be characterized as "land contract[s] in which the legal title does not pass to the grantee until the total consideration specified in the contract has been paid," MCL 207.526(o). However, as mentioned, the purchase agreements in this case were not recorded, and thus whether they are exempt under MCL 207.526 is purely academic. In any event, we disagree with the suggestion that the land-contract exemption delays the assessment of taxes rather than the date on which the transfer tax is paid. We conclude that the land-contract exemption delays the date on which the transfer tax is paid, and merely allows buyers to record land contracts without immediately paying the tax, thus protecting the buyers' rights under the land contract until a deed is executed.

equitable interest in the property, under the SRETTA, the transfer of "*any* interest in the property" will suffice. MCL 207.523(1)(a) (emphasis added). As a practical matter, "[a] trial court should enforce the equities of the parties in such a manner as to put them as nearly as possible in the position that they would have occupied had the conveyance of the real property occurred when required by the contract." *Godwin v Lindbert*, 101 Mich App 754, 758; 300 NW2d 514 (1980). In other words, "[l]and, traditionally presumed to have a peculiar value, is subject to specific performance." *Kent v Bell*, 374 Mich 646, 651; 132 NW2d 601 (1965). Here, each purchase agreement indicated a specific lot number that identified the real estate purchased. "Conceivably, [the land] could not be duplicated by an award of money." *Id.* Thus, execution of the purchase agreement transfers to the buyer an equitable interest in the property, which gives rise to a cause of action for possession of the property. Therefore, we conclude that the value of the property for purposes of assessment is determined at the time the parties execute the purchase agreement.

We reverse and remand for further proceedings. We do not retain jurisdiction.

WILDER, P.J., concurred.

DAVIS, J. (*dissenting*). I respectfully disagree with my colleagues' interpretation of the State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq.* I believe that it clearly articulates a legislative intent to impose a tax based on the value of property at the time title is legally transferred. I would therefore affirm.

MCL 207.523(1) imposes

a tax upon the following written instruments executed within this state when the instrument is recorded:

(a) Contracts for the sale or exchange of property or any interest in the property or any combination of sales or exchanges or any assignment or transfer of property or any interest in the property.

(b) Deeds or instruments of conveyance of property or any interest in property, for consideration.

Significantly, the purchase agreements involved here were not recorded. Only the subsequent deeds were recorded. On these facts, the plain, unambiguous language of the statute imposes a tax on the deeds, not the purchase agreements.

MCL 207.532(1) further provides, in relevant part, that the state real estate transfer tax "shall be paid only once" and "shall not be imposed on a written instrument that transfers property if the written instrument is given and the transfer made pursuant to a written executory contract upon which the tax was previously paid." No tax was previously paid here, nor could it have been because the only taxable instruments under the facts of this case are the instruments actually recorded.

The majority correctly points out that " '[v]alue' means the current or fair market worth in terms of legal monetary exchange *at the time of the transfer.*" MCL 207.522(e) (emphasis added). MCL 207.532(1) also refers to "the transfer." The only logical interpretation is, as the majority concludes, that the Legislature intended to impose a tax on certain instruments conveying an interest in property at the time those instruments are recorded, but in an amount calculated on the basis of the value of the property when "the transfer" took place. The SRETTA does not explicitly define "transfer," other than clearly indicating that there can only be one "transfer" relevant to any given instrument. The majority erroneously concludes that, because

*a* transfer (of an equitable interest) took place with the execution of the purchase agreement, that must be *the* transfer.

The state real estate transfer tax is imposed only on the instrument that is actually recorded. The majority's construction of the statute would calculate the tax on the basis of a "transfer" that took place in an entirely different instrument, even though the recorded instrument—upon which the tax is actually imposed—*also* contains a transfer. This creates a complication that the Legislature did not intend from a plain reading of the statute. Indeed, the Legislature specifically provided for certain exceptions, such as land contracts, MCL 207.526(o), or instruments "to confirm title already vested in a grantee," MCL 207.526(n). If the Legislature had intended to impose a tax based on the *first* transfer, or based on *any* transfer, it could easily have said so. Instead, it refers to *the* transfer, logically referring to the transfer embodied in the instrument being recorded and on which the tax is imposed. Here, that refers to the transfer of legal title to the improved lot with the house on it.[1]

Reading the statute as a whole further indicates that the Legislature did not intend to include equitable transfers in computing the state real estate transfer tax. The majority relies heavily on the language "or any interest in the property" for its conclusion that a transfer of equitable title will suffice as a "transfer." However, the best way to determine "the current or fair market worth in terms of legal monetary exchange," MCL 207.522(e), is to examine how much money was, in fact, exchanged. When legal title passes, the seller is presumably satisfied that he or she has received full

[1] Both fall within the definition of "property" under the SRETTA. MCL 207.522(b).

compensation, and the buyer is presumably satisfied that he or she is not paying too much. A purchase agreement conveys an equitable interest that could be enforced by filing suit for specific performance, but the transaction is not complete at that point. More significantly, the classic understanding of an "interest in the property" is what *bundle of rights* the purchaser has acquired by the transaction, not the kind of suit that would be necessary to enforce those rights. For example, fee simple absolute is an "interest in the property," as is a life estate or a possibility of reverter. The majority's focus on a partial transfer of the relevant interest, rather than on the interest itself, further defeats the Legislature's intent.

The plain, unambiguous language of the SRETTA imposes a tax on the value of the transfer effectuated by the instrument that is being recorded. In this case, that transfer—by deed—is of legal title to the improved property, including the lot and the house. Therefore, I would affirm.