*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THE NORRIS CONSULTING GROUP, INC.,

        Plaintiff-Appellant,

v

JENNIFER HUGHBANKS, PARTHIV
DANDNAIK, and REDFORD, LLC,

        Defendants-Appellees.

UNPUBLISHED
September 15, 2022

No. 358151
Wayne Circuit Court
LC No. 20-002911-CK

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Plaintiff, The Norris Consulting Group, Inc., appeals as of right the trial court's order denying its motion for summary disposition and granting summary disposition in favor of defendants Parthiv Dandnaik and Redford, LLC (Redford).[1] On appeal, plaintiff argues that the trial court erred by dismissing its tortious interference with contract claim and its claim that defendants[2] Redford and Dandnaik breached MCL 600.3248. We agree that the trial court erred by dismissing plaintiff's claim that defendants breached MCL 600.3248, but we disagree that the trial court erred by dismissing plaintiff's claim for tortious interference with contract. Therefore, we affirm in part, reverse in part, and remand for further proceedings on plaintiff's MCL 600.3248 claim.

## I. FACTS

This case arises from plaintiff's efforts to buy a piece of real property that defendants had bought earlier at a sheriff's sale. Plaintiff is a company owned by Mark Abbruzzese. Defendant Redford is a real estate investment firm owned by defendant Dandnaik. Dandnaik is Redford's

---

[1] The trial court entered a default judgment against defendant Jennifer Hughbanks on December 22, 2020, resolving plaintiff's claim against her separately.

[2] Hereafter, we will use "defendants" to refer collectively to Redford and Dandnaik in his capacity as owner of Redford. We will refer to Hughbanks separately as "Hughbanks."

sole member. Hughbanks owned residential property located in Van Buren Township, Michigan (the Property). At some point in 2019, Hughbanks defaulted on her mortgage payments, and the Property became subject to foreclosure sale by advertisement. A sheriff's sale was held on October 24, 2019. At the sheriff's sale, defendants bought the Property with a winning bid of $46,180.93. After buying the Property, defendants recorded an Affidavit of Purchaser in accordance with MCL 600.3240(2). The Affidavit of Purchaser stated that the last day the Property could be redeemed was April 24, 2020. It identified Jacob Woods, one of Dandnaik's employees, as defendants' designee responsible for receiving redemption payment and for assisting with computing the amount required to redeem the Property.

On the same day as the sheriff's sale, Woods sent Hughbanks a letter requesting to do an inspection of the Property. Hughbanks did not respond to the request for inspection, and so in November 2019, defendants asked the district court to terminate Hughbanks' redemption rights and to evict her from the Property. Hughbanks did not appear at the summary proceeding hearing in the district court, so on January 9, 2020, the district court entered a default judgment against her.

Several days after the district court had entered its default judgment, on January 14, 2020, Hughbanks negotiated with Abbruzzese and agreed to sell the Property to plaintiff.[3] That day, plaintiff and Hughbanks executed a purchase agreement. Under the agreement, plaintiff agreed to pay Hughbanks $65,000 for the Property. Abbruzzese averred that, "[a]fter paying the Redemption Amount in order to provide [plaintiff] clear title, [Hughbanks] would keep about $15,000 from the sale of the Property." Plaintiff and Hughbanks agreed that closing would take place no later than February 14, 2020.

Amy Perry, an employee for First Centennial Title Agency, Inc., of Mid-America (First Centennial), was tasked with paying the redemption amount to defendants. Perry averred that, at the February 14, 2020 closing, First Centennial would wire a portion of plaintiff's $65,000 to defendants to redeem the Property. To arrange this payment, Perry averred, Perry contacted Woods. On either January 23, 2020, or January 24, 2020, Perry connected with Woods for a phone call.[4] Woods indicated that, during this phone call, Perry told him about Hughbanks and plaintiff's purchase agreement, and that Perry asked Woods to provide her with a "payoff." By "payoff," Woods understood that Perry was attempting to arrange payment of the redemption amount. Woods never followed up with Perry after this phone call. On January 28, 2020, attorney for defendants, David Applebaum, e-mailed Perry. Applebaum stated that the redemption period had

---

[3] Specifically, Hughbanks agreed to sell the Property to Equity Trust Company Custodian FBO Mark Abbruzzese IRA. On February 24, 2020, however, Equity Trust Company Custodian FBO Mark Abbruzzese IRA assigned the purchase agreement to plaintiff. Because of this later assignment, for sake of simplicity, we will refer to the purchase agreement as though it were executed between Hughbanks and plaintiff.

[4] Woods testified that this phone call occurred on January 23, 2020; Perry averred it occurred on January 24, 2020.

expired, title to the Property had vested with defendants, and defendants would not be providing Perry any information regarding the amount necessary to redeem the Property.

Two days later, on January 30, 2020, Hughbanks moved the district court to set aside the default judgment. On February 5, 2020, the district court granted Hughbanks' motion and vacated the default judgment. After the district court vacated the default judgment, on February 6, 2020, Perry e-mailed Applebaum about paying the redemption amount. The next day, on February 7, 2020, Dandnaik responded to Perry, indicating that defendants would not be providing her with any information because defendants were appealing the district court's decision to vacate the default judgment.

On February 13, 2020, Hughbanks' real estate agent, Alicia Young, spoke to Abbruzzese. Abbruzzese informed Young that plaintiff would not close unless the proceeds were deposited in an escrow account. Young indicated that Abbruzzese requested this because defendants were appealing the district court's order setting aside the default judgment. Because Abbruzzese wanted the closing to occur in escrow, Hughbanks decided not to go through with the closing.

About a week after Hughbanks failed to close with plaintiff, on February 20, 2020, Young reached out to defendants and told them she was representing Hughbanks. According to Dandnaik, Young offered to sell Hughbanks' interest in the Property to defendants for $20,000—Young would take $5,000 and Hughbanks would take $15,000. Defendants agreed to the offer. The next day, on February 21, 2020, Hughbanks gave defendants a quit claim deed to the Property. In return, defendants paid Hughbanks $15,000 and Young $5,000.

On February 25, 2020, plaintiff sued Hughbanks for breach of contract. Plaintiff later amended its complaint to add a claim against defendants for tortious interference with contract and a claim against defendants for violating MCL 600.3248 by refusing to accept tender of the redemption amount. Hughbanks failed to respond, and the trial court entered a default judgment against her.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10) on plaintiff's tortious interference with contract claim and plaintiff's claim against defendants for violating MCL 600.3248. Plaintiff filed a cross-motion for summary disposition under MCR 2.116(I)(2). In an opinion and order issued May 7, 2021, the trial court granted defendants' motion for summary disposition and denied plaintiff's motion for summary disposition. First, the trial court concluded that plaintiff failed to establish that defendants violated MCL 600.3248. Citing *Johnston v Sterling Mtg & Investment Co*, 315 Mich App 724; 894 NW2d 121 (2016), the trial court reasoned that, so long as a sheriff's sale purchaser has "filed the affidavit contemplated by MCL 600.3248," a sheriff's sale purchaser cannot be held liable for failing to participate in the redemption process because the party seeking to redeem could have paid the redemption amount to the register of deeds. In this case, defendants filed an Affidavit of Purchaser, and so plaintiff could have paid the redemption amount to the register of deeds. Therefore, defendants could not be held liable for violating MCL 600.3248. Second, the trial court concluded that plaintiff failed to establish a claim for tortious interference with contract because plaintiff did not show that a valid contract existed. From January 9, 2020 until February 5, 2020, the trial court reasoned, the default judgment issued by the district court was valid. So during that time, Hughbanks had no interest in the Property. Consequently, when Hughbanks entered into the purchase agreement on

January 14, 2020, "she was promising to exercise redemption rights that did not exist." As a result, the purchase agreement "was legally invalid . . . ." This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Likewise, we review de novo questions of statutory interpretation, *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009), and questions involving the proper interpretation of a contract, *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 426; 670 NW2d 651 (2003). Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and the trial court did not specify the subrule under which it was granting defendants' motion for summary disposition. But because the trial court considered material outside the pleadings, we review the court's decision under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The pleadings, affidavits, depositions, and other documentary evidence is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). But a mere possibility that the claim might be supported by evidence at trial is insufficient to defeat a motion for summary dismissal. *Bennett v Detroit Police Chief*, 274 Mich App 307, 318-319; 732 NW2d 164 (2006). If it appears that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, summary disposition is granted under MCR 2.116(I)(2). *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 422; 952 NW2d 576 (2020) (citation omitted).

## III. LIABILITY UNDER MCL 600.3248

MCL 600.3248 addresses a party's civil liability for refusing tender or payment of redemption funds after a foreclosure. *Johnston*, 315 Mich App at 748. In relevant part, MCL 600.3248 provides:

> If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action . . . .

Hence, if a person entitled to receive redemption money refuses the tender or payment of that money, he or she is liable to the person he or she injures as a result of the refusal. See MCL 600.3248. As purchaser of the Property at the sheriff's sale, defendants were entitled to receive

redemption money. See MCL 600.3240(1). The question, then, is whether plaintiff tendered payment, and if so, whether defendants refused that tender.[5]

Plaintiff's evidence shows that plaintiff, through Perry, tendered payment of the redemption amount to defendants. "Tender" means to make a "valid and sufficient offer of performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation . . . ." *Johnston*, 315 Mich App at 747, quoting *Black's Law Dictionary* (9th ed). On either January 23, 2020 or January 24, 2020, Perry asked Woods to provide her a "payoff." By "payoff," Woods testified, he understood that Perry was attempting to arrange payment of the redemption amount. In other words, Woods understood Perry to be making an offer of performance. Still, Woods did not respond to Perry. And on January 28, 2020, Applebaum confirmed to Perry that defendant would not be providing Perry any information. The district court set aside the default judgment on February 5, 2020, and on February 6, 2020, Perry again contacted defendants about paying the redemption amount. Defendants again refused.

In short, plaintiff's evidence shows that defendants refused to acknowledge plaintiff's tender of payment. The trial court did not find otherwise. Instead, citing this Court's decision in *Johnston*, the trial court concluded that a purchaser of foreclosed property cannot be held liable under MCL 600.3248 when the party seeking to redeem could have paid the redemption amount to the register of deeds—at least if the purchaser of the foreclosed property filed an Affidavit of Purchaser.

---

[5] Citing MCR 2.201(B), defendants argue that plaintiff is not the real party in interest to assert a claim under MCL 600.3248, or else lacked standing to do so. To be the real party in interest to assert a claim under MCL 600.3248, defendants reason, one must be an aggrieved party. And to be an aggrieved party under MCL 600.3248, defendants argue, one must be either "the mortgagor, the mortgagor's heirs or personal representative, or any person that has a recorded interest in the property lawfully claiming under the mortgagor or the mortgagor's heirs or personal representative . . . ." See MCL 600.3240(1). Put otherwise, defendants argue that only those permitted to pay the redemption amount according to MCL 600.3240(1) may hold a party liable for refusing tender under MCL 600.3248. Whether an individual is the real party in interest is a question of law that we review de novo. *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013). Assuming without deciding that defendants' interpretation of MCL 600.3248 is accurate, the fact remains that plaintiff was a "person that has a recorded interest in the property lawfully claiming under the mortgagor . . . ." See MCL 600.3240(1). "[I]t is well-settled that the execution of a purchase agreement transfers an [equitable] interest in property." *Lake Forest Partners 2, Inc v Dep't of Treasury*, 271 Mich App 244, 249; 720 NW2d 770 (2006), rev'd in part on other grounds by 480 Mich 1046 (2008). And plaintiff recorded this interest by filing a notice of claim of interest with the register of deeds. Defendants identify no authority stating that one must file the purchase agreement itself to properly record their interest.

The trial court misinterpreted this Court's decision in *Johnston*. *Johnston* did not concern a purchaser of foreclosed property's liability under MCL 600.3248.[6] The issue in *Johnston* was whether parties seeking to redeem a foreclosed property had paid the redemption amount in accordance with MCL 600.3240(1). *Johnston*, 315 Mich App at 746. In *Johnston*, after the redemption period expired, the purchasers of a foreclosed property sued the mortgagors in district court to evict the mortgagors from the property. *Id.* at 735. Because the mortgagors had not delivered the redemption money to the purchasers of the foreclosed property, the district court evicted the mortgagors. *Id.* at 736. On appeal, the mortgagors conceded that they had not actually delivered the redemption funds, but they argued that actual delivery was unnecessary to satisfy MCL 600.3240(1) because the purchasers had frustrated delivery. *Id.* at 747, 751. Stated differently, they argued their tender of payment was enough. See *id.* at 751. This Court was unpersuaded. *Id.* This Court noted that, unlike MCL 600.3248, MCL 600.3240(1) required payment of the redemption funds—not payment or tender:

> However, nowhere in MCL 600.3240 is the term "tender" used. Appellants find the term in MCL 600.3248, which provides: "If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action . . . ." Appellants focus on the wrong statute: MCL 600.3248 addresses a party's civil liability for refusing tender or payment, but it is MCL 600.3240 that specifically sets forth the process to be used in redeeming foreclosed property. [*Id.* at 748.]

And even if the purchasers had frustrated delivery of the redemption funds, this Court noted, to redeem their property, the mortgagors still could have paid the redemption funds to the register of deeds. *Id.* at 752.

Accordingly, *Johnston* does not stand for the proposition that a purchaser of foreclosed property is exempt from liability under MCL 600.3248 when the party seeking to redeem could have submitted payment through the register of deeds. The trial court erred by concluding otherwise.

Nonetheless, this does not mean that plaintiff was entitled to summary disposition in its favor. Given that plaintiff had alternative means to pay the redemption amount, there is a colorable argument that plaintiff was not "aggrieved" by defendants' refusal of tender. See MCL 600.3248 ("If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person *aggrieved* thereby . . . .") (emphasis added). On the other hand, there is a colorable argument that plaintiff was aggrieved. For without defendants' cooperation in providing the correct redemption

---

[6] The parties in *Johnston* had raised that claim as a part of their quiet title action in the court below, but this Court did not address the merits of that claim because this Court concluded the claim was barred by res judicata. *Id.* at 742, 755.

amount, plaintiff risked paying the incorrect amount.[7]  And if plaintiff paid the incorrect amount, plaintiff could not redeem the Property.  See MCL 600.3240(1) (providing that a sheriff's deed is void if the property is redeemed "*by paying the amount required . . .* within the applicable time limit prescribed . . . .") (emphasis added); see also *Johnston*, 315 Mich App at 752.  Thus, while the fact that plaintiff had alternative means to pay the redemption amount does not automatically exempt defendants from liability under MCL 600.3248 as the trial court suggested, it does leave a genuine issue of material fact as to whether plaintiff was "aggrieved."  Thus, we remand for further proceedings on this issue.

As an alternative basis on which to affirm the trial court, defendants argue that, even if they did refuse plaintiff's tender and plaintiff was aggrieved thereby, they cannot be held liable under MCL 600.3248 because the district court's January 9, 2020 default judgment divested Hughbanks of her redemption rights.  We agree that defendants cannot be held liable for refusing tender between January 9, 2020 and February 5, 2020.  But defendants can still be held liable for refusing tender after February 5, 2020.

After the district court entered the default judgment against Hughbanks on January 9, 2020, her right of redemption was extinguished, and title to the Property vested in defendants.  See MCL 600.3238(10); *1373 Moulin, LLC v Wolf*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360569); slip op at 6.  But about a month later, on February 5, 2020, the district court set aside the default judgment.  "It is well settled that judgments that have been set aside are nullities." *Smith v MEEMIC Ins Co*, 285 Mich App 529, 532; 776 NW2d 408 (2009).  As a result, when the district court set aside the default judgment on February 5, 2020, "it was the same as if no such judgment had ever been rendered," *id*. at 533 (internal quotation marks and citation omitted), and Hughbanks' redemption rights were, in effect, restored.  That said, from January 9, 2020 until February 5, 2020, MCL 600.3248 imposed no duty on defendants,[8] but it did impose a duty on

---

[7] Even though defendants filed an Affidavit of Purchaser with the register of deeds, the Affidavit of Purchaser explicitly noted that the redemption figure listed therein was subject to increase

> to include any amount paid by [defendants] . . . for taxes, amounts necessary to redeem senior liens, condominium assessments, homeowner association assessments, community association assessments, insurance premiums, and any other amounts as provided by MCLA 600.3240(4), as well as interest thereon at the interest rate specified in the mortgage from the date of the payment to the date of redemption.

[8] Plaintiff argues that MCL 600.3248 imposed a duty on defendants from January 9, 2020 until February 5, 2020, because the effect of setting aside a judgment is as if no judgment had ever been entered.  Plaintiff's argument assumes Hughbanks' redemption rights were retroactively restored but cites no authority supporting this assumption.  And at any rate, as this Court has noted, "an order of the court must be complied with at the time it is entered even if the order is clearly incorrect[.]" *Johnson v White*, 261 Mich App 332, 346; 682 NW2d 505 (2004).

them after the default judgment was vacated on February 5, 2020. For that reason, defendants would still be liable for refusing Perry's tender of the redemption payment on February 6, 2020.[9]

## IV TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff next argues that the trial court erred by dismissing its claim for tortious interference with a contract. We disagree.

Tortious interference with a contract is an intentional tort. *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013). "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id.* (citations omitted). The trial court concluded that plaintiff failed to establish the existence of the first element: a valid contract. The trial court reasoned that the purchase agreement was invalid because, when Hughbanks and plaintiff entered into it on January 14, 2020, Hughbanks had no redemption rights.[10]

The trial court did not err. A contract is valid only if supported by legal consideration. *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Consideration is "[s]ome right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000), quoting *Black's Law Dictionary* (6th ed), p 306. As discussed above, after the default judgment entered on January 9, 2020, Hughbanks' right of redemption was extinguished, and title to the Property had vested in defendants. Hughbanks had no interest in the Property until her interest was restored by the setting aside of the default judgment on February 5, 2020. Consequently, when Hughbanks promised to sell plaintiff her interest on January 14, 2020, her promise lacked any value.[11] The purchase agreement was invalid for want of consideration.

---

[9] And defendants' appeal of the district court's order vacating the default judgment did not stay enforcement of the order because there is no evidence showing that they paid the requisite bond. See MCR 7.108(B)(2); *Mathew R Abel, PC v Grossman Investments Co*, 302 Mich App 232, 236 n 1; 838 NW2d 204 (2013).

[10] Plaintiff argues that, under the law of the case doctrine, the trial court was barred from finding that the purchase agreement was invalid. This is because, plaintiff argues, the trial court had previously concluded the purchase agreement was valid when it entered a default judgment against Hughbanks. "Under Michigan law, however, the law-of-the-case doctrine does not apply to prior trial court decisions." *Tinman v Blue Cross & Blue Shield of Mich*, 264 Mich App 546, 560; 692 NW2d 58 (2004). So the law of the case doctrine would not apply in this context.

[11] Defendants argue that the purchase agreement was invalid because it violated the statute of frauds; Hughbanks signed her name to convey property that she had no interest in. Even if it did violate the statute of frauds, however, this Court has recognized that a contract defense, like the statute of frauds, is not a bar to an action for tortious interference with contract. *Northern*

In summary, we affirm the trial court's dismissal of plaintiff's tortious interference with contract claim, but we reverse the trial court's dismissal of plaintiff's MCL 600.3248 claim. With respect to plaintiff's MCL 600.3248 claim, the trial court erred by concluding that a purchaser of foreclosed property cannot be held liable under MCL 600.3248 when the party seeking to redeem could have submitted the redemption payment to the register of deeds. That plaintiff had alternative means to pay the redemption amount may bear on whether plaintiff was aggrieved by defendants' refusal of tender, but it does not automatically exempt defendants from liability. Because the undisputed evidence in this case shows that defendants refused plaintiff's tender of the redemption amount, the trial court should not have granted defendants' motion for summary disposition on plaintiff's claim that defendants violated MCL 600.3248. Because there is a genuine issue of material fact as to whether plaintiff was aggrieved by defendants' refusal of tender, remand for further proceedings on plaintiff's MCL 600.3248 claim is necessary.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates

---

*Plumbing & Heating, Inc v Henderson Bros, Inc*, 83 Mich App 84, 93; 268 NW2d 296 (1978). In *Northern Plumbing*, this Court held:

> The statute of frauds is not a bar to this type of action. This is a tort, not dependent on the enforceability of the contract per se, but rather, on the stranger's interference with it. Plaintiff must still show all of the elements for contract formation, that is, that a contract existed, but it is not necessary to show that the contract is enforceable in an action at law against the other contracting party. [*Id.*]

Because *Northern Plumbing* was decided before November 1, 1990, it is not precedentially binding on this Court, but we find it to be of continuing persuasive interest. See MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).